(April 24, 1896.)

## STINSON v. ROURKE.

[46 Pac. 445.]

ALLEGATIONS—PROOF—INSTRUCTIONS—NEW TRIAL.—Where the allegations of the complaint are supported by the proofs, and the verdict and judgment are in accordance with both, the supreme court will not grant a new trial because an instruction was given which, although correct, as an abstract principle of law, was not applicable to the case.

(Syllabus by the court.)

APPEAL from District Court, Nez Perces County.

James E. Babb, for Appellant.

The court erred in giving to the jury the following instructions, to wit: "You are further instructed that while one person cannot make another his debtor without the consent of the latter, or ·recover for services rendered for another without a request, express or implied, yet, if one stands by and sees another doing work for him, beneficial in its nature, and overlooks it as it progresses and does not interfere to prevent or forbid it, but appropriates such labor to· his own use, then, in the absence of a special contract, a request will be implied to pay for the work what the same is reasonably worth, unless it expressly appears from the evidence that it was done as a gift or gratuity. And you are further instructed that when one person labors for another with his knowledge and consent, and the latter voluntarily takes the benefit of such labor, then the law will presume that the laborer is entitled to have what his services were reasonably worth." The instruction is not applicable to a suit against a crop mortgagee for wages in harvesting the crop. That instruction would be applicable in such an action against the owner of the crop, because he would be presumed to know that the work was being done for him, and· in overlooking the work as it progressed he could be supposed by the laborers to be acting in no capacity other than as proprietor adopting the labor. (*De Wolf v. Chicago,* 26 Ill. 443; *Tascott v. Grace,* 12 Ill. App. 611; *Day v. Caton,* 119 Mass. 513, 20 Am. Rep. 347.)· The instruction is based on the principles of estoppel and waiver, and a party's conduct to create an estoppel or waiver must be "inconsistent with any other explanation." (*B. & M. R. R. Co. v. Boestler,* 15 Iowa, 558; *Grey v. Blanchard,* 8 Pick. 292; *Jackson v. Crysler,* 1 Johns. Cas. 125; *Lawrence v. Gifford,* 17 Pick. 336.) The instruction was erroneous in that it authorized a recovery on implied contracts when the complaint was based only on express contracts. (*Rockwell Stock etc. Co. v. Castroni,* 6 Colo. App. 528, 42 Pac. 182.)

S. S. Denning and James W. Reid, for Respondent.

There is no allegation in the complaint in any of the causes of action that the contract was either an express or an implied

contract, but the allegation in each of the causes of action set
forth that the defendant by his agent promised to pay him the
sum of —— dollars. We maintain that under this allegation
we could prove the actual state of the facts as they existed, and
in so doing could either prove an express or an implied con-
tract to pay. We maintain that it is only needful for the
pleader to state the facts out of which his cause of action grows,
and, this being proven, he may recover whether he has alleged
a promise by the defendant or has omitted to state any. (*Rock-
well Stock etc. Co. v. Castroni,* 6 Colo. App. 528, 42 Pac. 182;
*Hirst v. Litchfield,* 39 N. Y. 377; *Sussdroff v. Schmidt,* 55 N.
Y. 319; *Kerstetter v. Raymond,* 10 Ind. 199; *Green v. Gilbert,*
21 Wis. 401; Pomeroy's Rights and Remedies, sec. 543, et seq.;
Lawson's Rights and Remedies, sec. 3696, p. 5765.)

Thomas Stinson, plaintiff, brings suit against T. F. Rourke,
defendant, for work and labor in threshing wheat, demanding
the sum of $330.36, and also as the assignee of eleven other
parties who claim to have performed work and labor for the de-
fendant in harvesting and threshing said grain, amounting in
the aggregate, together with the claim of Stinson himself, to
the sum of $1,078.01. The defendant demurred to the com-
plaint, which demurrer was overruled by the court, and defend-
ant filed his answer, denying each and every allegation in the
complaint. The cause was tried before the court and a jury,
resulting in a verdict and judgment for plaintiff in the sum
of $1,040.06. Defendant moved the court for a new trial,
which was denied. Thereupon he appealed to this court, both
from the judgment and from the order overruling motion for
new trial. Affirmed.

MORGAN, C. J. (After Stating the Facts).—The witnesses,
being assignors of the claims upon which suit is brought, testi-
fied that one G. V. Hamilton, who claimed to be the agent of
Rourke, the defendant, came upon the ground where the wheat
was grown, on the Indian reservation in Latah county, Idaho,
and employed them to work in the harvesting and threshing of
the wheat raised by Bergevin Brothers & Martin, and upon which
the defendant held a mortgage. As evidence of his right to

make contracts for the defendant, Rourke, Hamilton exhibited a letter of attorney from the defendant, of the following tenor:

"To Whom Handed: This is to certify that I have this day appointed the bearer, George V. Hamilton, my agent for the purpose of looking after and handling, and taking such action as he may deem best and proper in the matter of the Bergevin Brothers & Martin crop of wheat, on the Nez Perces Indian reservation, near Genesee, Idaho, on which said crop I have a mortgage. Any arrangements or contracts entered into by him in connection therewith will be protected and enforced by me. He has full power and authority to make any arrangements or contracts he may deem best in the premises.

"September 6, 1895.

(Signed)    "T. F. ROURKE,
"Pendleton, Oregon."

A copy of this letter was produced by Hamilton, and put in evidence in this case. It will be seen that this letter gives Hamilton full power to act for defendant in the premises, and in it Rourke agrees to protect and enforce any and all arrangements and contracts entered into by Hamilton, for defendant, in the matter of harvesting and securing the said crop of wheat. The evidence shows that, before the appearance of Hamilton, one Jackson, who had taken the contract for harvesting the wheat from Bergevin Brothers & Martin, had ceased the work of harvesting, for the reason that Bergevin Brothers & Martin could no longer furnish the means to pay for the harvesting and threshing of the grain. The men, being fearful of losing the pay for their work, had quit also. Upon the arrival of Hamilton, he shows this letter of attorney from Rourke to the men who had been engaged in the harvesting of the crop, and to others whom he wished to engage to assist in the work, and represented to these men that he had full power to act for Rourke in the harvesting of the grain; that thereafter there would be no trouble about the money for paying the men for their work. Upon these representations of Hamilton being made to these men, and to parties whom he desired to employ to go upon the ground and thresh the wheat, work was again commenced. The men testified that Hamilton, in person, em-

ployed each one of them, at a stipulated price, to go on and perform this work; also agreed with the threshers upon the amount they were to receive per bushel for threshing the grain; stating also to them that the money was ready as soon as the work was done. It is true that Hamilton, in his testimony, denied making special contracts with these men, or any of them; but the evidence that he did make these contracts, and representations to the men, is overwhelming, and, it seems, was not doubted at all by the jury, and certainly is not by the court. There can be no question of the fact that Hamilton employed these men to do this work, and also that he represented to them that he had the money to pay them, and that he was the agent of Rourke, and obtained the money from Rourke.

The appellant relies specially upon the following assignment of errors: "The court erred in giving to the jury the following instruction: 'You are further instructed that while one person cannot make another his debtor, without the consent of the latter, or recover for services rendered for another without a request, express or implied, yet if one stands by, and sees another doing work for him, beneficial in its nature, and overlooks it as it progresses, and does not interfere to prevent or forbid it, but appropriates such labor to his own use, then, in the absence of a special contract, a request will be implied, and the person for whom the work has been done will be liable to pay for the work what the same was reasonably worth, unless it expressly appears from the evidence that it was done as a gift or gratuity. And you are further instructed that when one person labors for another, with his knowledge and consent, and the latter voluntarily takes the benefit of such labor, then the law will presume that the laborer is to be paid for his labor, unless the contrary is shown by the evidence; and if no special contract is proved, fixing the price, then the laborer is entitled to have what his services were reasonably worth'—first, because it is not applicable to the liability of a crop mortgagee for labor performed in heading or threshing the crop; second, because the complaint in this case is not based upon implied contracts, but upon express ones." The second objection will be considered first, as the consideration of that would appear to settle both.

The plaintiff testifies to the contract substantially as alleged. Seven of the men who were the assignors of Stinson also testify in the case, for each of whom an express contract was alleged with Hamilton, as the agent of Rourke, the defendant. The testimony of Means and Hamilton abundantly show the agency of Hamilton. D. A. Woods, one of the threshers, swears to a specific contract in detail. J. I. Long made a contract with Girault, but declined to go to work until he saw Hamilton. By this contract he was to get fifty cents per day, each, for fifteen head of horses, and five dollars per day for himself and his machine. When he saw Hamilton the latter asked him why he did not go to work. Long replied that he would go to work as soon as he knew who was to pay. Hamilton said, "All right," he would see that he was paid. Hamilton also told Long that whatever contract Girault made, he (Hamilton) would stand by. G. T. Riley swears to a personal contract with Hamilton, substantially as alleged, with much conversation concerning the pay, unimportant in itself, but important as giving character to the whole of his testimony—giving it the impress of truth. A. K. Richardson ran a header. He swears to an express contract with Hamilton about the 27th of October, 1893. He agreed to pay Richardson six dollars per day for himself and six horses, with machine. Hamilton paid him ten dollars. Otto Haberle testified that Hamilton told him to go out and work. Haberle said: " 'Mr. Hamilton, I want to understand about my pay.' 'Well,' he says, 'you need not be afraid. Mr. Rourke, of Pendleton, is good for it.' I said: 'All right. I will go to work.' " And he did so. Hamilton offered him three dollars a day, and fifty cents each for his horses. This was the last of October, 1893. William Alexander testifies: "I commenced work at the request of Girault, and saw Hamilton afterward. I was a little in doubt about Girault's authority, and spoke to Hamilton about it; and he said it was all right, and he would pay me when I got through." This testimony was repeated in different forms, but in each substantially the same. It was agreed that Alexander was to have six dollars per day for himself and six horses. He ran a header. For each one of these men, as stated, an express contract was al-

leged, and substantially proven beyond question. The jury are the sole judges of the weight to be given to the testimony of each witness. Evidently the statements of the workmen were believed by the jury, as against that of Hamilton. The aggregate amount due, as testified to by Stinson and the seven workmen is $1,158.10. The amount alleged in the complaint to be due these parties is $1,060. The amount found by the jury to be due Stinson, plaintiff, on his own claim and as assignee, is $1,040.06. For this amount judgment is rendered. Hamilton swears that he never made any contract with these men, but he also swears that the power of attorney was not given to him to do anything that was necessary to save the crop and get it shipped out. "It was only given me," he says, "to settle accounts that had been contracted prior to that date." The power of attorney tells an entirely different story. The circumstances surrounding the parties and the grain when Hamilton appeared tell a different story. All bear witness against Hamilton and the contention of the defendant. The jury believed them. We must believe them also. We have their express contracts alleged and proven beyond question, and the verdict and judgment supported. It is neither necessary nor proper to allege all the details of a contract in the complaint. Only ultimate facts need be alleged. We agree, then, with the appellant that the instruction given had no place in this cause, and for the reason given—that "the case was not based upon implied contracts, but express ones." It was not applicable to either the law or the evidence. As an abstract statement of law, it is substantially correct, and might be properly given, under certain conditions. To proceed to inquire whether such an instruction can ever be applicable to a suit against a crop mortgagee for wages in harvesting the crop would clearly be a bootless undertaking, as it could not, in either case, change this decision. Where the allegations of the complaint are supported by the proofs, and the verdict and judgment are in accordance with both, it cannot be the duty of this court to grant a new trial because an instruction was given which, although correct as an abstract principle of law, was not applicable to the case, and when it is apparent that the jury paid no attention to the

instruction, and where, if they had, it could have made no difference in the result. The judgment of the lower court is affirmed, with costs to respondent.

Sullivan and Huston, JJ., concur.

## ON PETITION FOR REHEARING.

MORGAN, C. J.—The reasons therefor, as given in this petition, are answered in their order.

First, the evidence in the case was so strong, and preponderating to such an extent, that it would have been the duty of the court to set aside the verdict and grant a new trial, had the verdict been for the defendant. The statement that Rourke's only connection with the account was to guarantee the payment of the Vollmer account is erroneous, as Rourke's letter of instructions to Hamilton is substantially as follows: "I have appointed George V. Hamilton my agent for the purpose of looking after and handling, and taking such action as he may deem best and proper in the matter of Bergevin Brothers & Martin crop of wheat, . . . . on which said crop I have a mortgage. Any arrangements or contracts entered into by him in connection therewith will be protected and enforced by me. He has full power and authority . . . . to make any arrangements or contracts he may deem best in the premises. [Signed] T. F. Rourke." This letter shows conclusively that the agent had full power in the premises for all purposes. It is immaterial whether this power of attorney or letter was shown to the workmen or not. He had it, and the workmen contracted with him. This is sufficient to fix his responsibility. The statement of appellant's witness that the letter was given him only to settle bills at Vollmer's, and arrange for more credit for Bergevin Brothers & Martin, is shown to be untrue by the letter itself. There appears to be no reason for granting a rehearing in above cause. Petition denied.

Sullivan and Huston, JJ., concur.